IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: § <br> JOE JESSE MONGE AND § <br> ROSANA ELENA MONGE, § <br> § <br> Debtors. § | | Case No. 09-30881-lmc |

| | | |
|---|---|---|
| JOE JESSE MONGE AND § <br> ROSANA ELENA MONGE, § <br> § <br> Plaintiffs and Counter-Defendants, § <br> § <br> vs. § <br> § <br> ALICIA ROJAS and FRANCISCO JAVIER § <br> JAYME, individually and collectively d/b/a § <br> FIRST MORTGAGE OF EL PASO, d/b/a § <br> GROUP II ELEMENTS, d/b/a MEGAMERICA § <br> MORTGAGE WEDGEWOOD, d/b/a § <br> frontier enterprises, d/b/a INFINITY § <br> INVESTMENT CAPITAL, d/b/a § <br> MORTGAGE-PROS and d/b/a VISION § <br> REALTY-WESTSIDE, MONROJ INVESTMENTS, § <br> INC., NORTHEAST PATRIOT PLAZA, INC., § <br> JOE VILLA and ALISON VILLA, and § <br> HUGO MAYNEZ MALDONADO a/k/a § <br> HUGO MAYNEZ a/k/a HUGO MALDONADO, § <br> § <br> Defendants and Counter-Plaintiffs. § | | Chapter 11 <br><br> Adversary No. 10-3019 |

THIRD AMENDED COUNTERCLAIM

TO THE HONORABLE BANKRUPTCY JUDGE PRESIDING:

THIRD AMENDED COUNTERCLAIM AND REQUEST FOR ABATEMENT OF PROCEEDING

COME NOW, ALICIA ROJAS and FRANCISCO JAYME, now as Counter-Plaintiffs herein ("Counter-Plaintiffs"), by and through their attorneys herein, Guevara, Baumann, Coldwell & Reedman, LLP, and file this Third Amended Counterclaim seeking enforcement of Counter-Plaintiffs' rights under their executory contract relating to the Property, and requesting an abatement of the above-captioned adversary proceeding to allow for the procedures prescribed under Sections 5.061, et seq. of the Texas Property Code, to be followed by the parties.

1. On or about February 3, 2006, Debtor, JOE MONGE, as landlord, and Defendant, ALICIA ROJAS, as tenant, entered into a Residential Lease (With Option To Purchase) (the "Lease").

The property leased under the Lease is located partially in Texas and partially in New Mexico, and has the address of 105 Thoroughbred Court, Santa Teresa, New Mexico (the "Property"). In the Lease, at Section 16.06, the parties agreed that "the laws of the State of Texas shall govern the interpretation, validity, performance and enforcement of this Lease."

2. The Lease, in an Addendum thereto, which was executed concurrently with the Lease, provides that the tenant shall have an option to purchase the Property for a purchase price equal to the balance that landlord owes on the day of closing on that certain promissory note executed by the landlord in the original principal sum of $697,500.00, dated February 3, 2006, payable to the order of America's Wholesale Lender and secured by a mortgage on the Property, plus $50.00 for the right to exercise the option.

3. Section 5.062 of the Texas Property Code provides that an option to purchase real property that includes or is combined or executed concurrently with a residential lease agreement, together with the lease, is an executory contract for conveyance of real property. The Lease, therefore, is an executory contract for conveyance of real property and is governed by section 5.061, et seq., of the Texas Property Code.

4. Section 5.065 of the Texas Property Code provides that a purchaser in default under an executory contract for the conveyance of real property may avoid the enforcement of foreclosure and acceleration or of rescission by complying with the terms of the lease (executory contract) on or before the 30th day after the proper notice of default is given to tenant/purchaser pursuant to Texas law. Since no such notice has been given to Counter-Plaintiffs here, Counter-Plaintiffs' time period during which Counter-Plaintiffs may cure their default, if any, under the Lease, has not yet begun to run.

5. Counter-Plaintiffs assert that they are ready, willing, and able to comply with the terms of the Lease (executory contract).

6. Counter-Plaintiffs' assert that Counter-Plaintiff, ALICIA ROJAS, is entitled to cure any default as is provided by Section 5.065 of the Texas Property Code, and hereby move that the Court find that, upon receiving proper notice from Plaintiff, JOE MONGE (now designated as Counter-Defendant), Counter-Plaintiff, ALICIA ROJAS, be afforded the right to cure any default as is provided under Section 5.065 of the Texas Property Code.

7. In the alternative, without waiving the foregoing, Counter-Plaintiffs move that this Court abate the above-captioned adversary proceeding to allow Plaintiff, JOE MONGE (now designated Counter-Defendant), to serve proper notice of default on Counter-Plaintiff, ALICIA ROJAS, and to afford Counter-Plaintiff, ALICIA ROJAS, her proper time period to cure any default as is provided by Section 5.065 of the Texas Property Code.

FRAUD AND RESCISSION

8. In or about January 2006, Counter-Plaintiffs and Counter-Defendants, Joe Jesse Monge and Rosana Elena Monge ("Counter-Defendants"), entered into an arrangement to jointly develop a residential subdivision. In order to provide funding for this residential development, Counter-Plaintiffs and Counter-Defendants entered into an arrangement whereby the equity that Counter-Plaintiffs had in their house located at 105 Thoroughbred Court, Santa Teresa, New Mexico (the "Property") could be

used for such funding. In order to access this equity and to be able to use Counter-Defendants' credit, Counter-Plaintiffs conveyed the Property to Counter-Defendants.

9. Although Counter-Plaintiffs conveyed the Property to Counter-Defendants, after the conveyance Counter-Plaintiffs remained in possession of the Property pursuant to a lease with an option to purchase (the "Lease"). Under the Lease, the rent to be paid by Counter-Plaintiffs to Counter-Defendants was equal to the mortgage payment due on the Property to the lender; and the purchase price for the Counter-Plaintiffs to repurchase the Property from Counter-Defendants was equal to the balance of the said mortgage at the time of the purchase. Moreover, at the closing when Counter-Plaintiffs conveyed the Property to Counter-Defendants, Counter-Plaintiffs paid the down payment in the amount of $78,700.36.

10. Prior to the conveyance of the Property from Counter-Plaintiffs to Counter-Defendants, Counter-Plaintiffs paid a monthly mortgage payment for the Property in the amount of approximately $3,600.00. When Counter-Plaintiffs conveyed the Property to Counter-Defendants, it resulted in an increase of approximately $1,400.00 per month in the mortgage payments for the Property. Counter-Plaintiffs and Counter-Defendants (hereinafter sometimes referred to as the "parties") agreed that each of them would pay one-half (½) of this increase, so that each of the parties would pay $700.00 per month of the resulting increase in the said mortgage payment.

11. The parties jointly formed Monroj Corporation, which entity was owned 50% by each of the parties and was to be used for the development of the residential subdivision. Monroj Corporation purchased the real property upon which the subdivision was to be developed. The parties intended that Monroj Corporation would cause the infrastructure for the development to be completed, and would sell lots within the subdivision to individuals or to builders for the construction of single-family homes. The parties agreed that each lot would be sold for $95,000.00, and that the net proceeds from the sale of each lot would be disbursed 50% to Counter-Plaintiffs and 50% to Counter-Defendants. The parties acknowledged and agreed that Counter-Plaintiffs would use their proceeds from these lot sales to pay off the mortgage on the Property.

12. At the time when Counter-Plaintiffs conveyed the Property to Counter-Defendants, Counter-Defendants represented to Counter-Plaintiffs that:
    (1)    Counter-Defendants would cooperate in the development of the residential subdivision by Monroj Corporation, and that
    (2)    the mortgage payments on the Property would be paid by:
        (a)    the Counter-Defendants paying one-half (½) of the increase in the monthly mortgage payment that resulted from the said conveyance, and
        (b)    the Counter-Plaintiffs out of the proceeds of the development of the residential subdivision.

These representations were material to Counter-Plaintiffs entering into the transaction and agreeing to convey the Property to Counter-Defendants. Since the Counter-Defendants failed to ever pay the agreed one-half (½) of the increase in the monthly mortgage payment that resulted from the said conveyance, and failed from the beginning to cooperate in the development of the residential subdivision, Counter-Plaintiffs assert that the above-referenced representations were false, and that Counter-Defendants made these representations knowing that they were false, intending that Counter-Plaintiffs rely upon these representations and enter into the transaction with Counter-Defendant in which Counter-Plaintiff conveyed the Property to Counter-Defendant. Counter-Plaintiffs did, in fact, enter into the said transaction with Counter-Defendant in reliance

upon the above-referenced representations, thereby suffering injury and damages. Counter-Plaintiffs here assert their claim against Counter-Defendants for the injuries and damages suffered by Counter-Plaintiffs as a proximate result of Counter-Defendants' fraud as is described herein. These damages and injuries include the potential loss of the Property by Counter-Plaintiffs, the loss of the down payment that was paid by Counter-Plaintiffs, as is described hereinabove, additional fees and charges incurred by Counter-Plaintiffs due to the fraud of Counter-Defendants, and attorney's fees and expenses incurred by Counter-Plaintiffs due to the fraud of Counter-Defendants.

13. Due to Counter-Defendants' fraud in inducing Counter-Plaintiffs to convey the Property to Counter-Defendants, Counter-Plaintiffs assert that equity would require that the said conveyance be rescinded and that the Court order the Property reconveyed to Counter-Plaintiffs. Counter-Plaintiffs are ready, willing, and able to restore any and all consideration paid by Counter-Defendants for the said conveyance, including any mortgage payments made subsequent to the conveyance by Counter-Defendants. Counter-Plaintiffs assert that Counter-Defendants would be unjustly enriched if they are allowed to retain the Property, and Counter-Plaintiffs request that the said conveyance be rescinded.

### OFFSET

14. Counter-Defendants assert that Counter-Plaintiffs owe to Counter-Defendants a sum of money that is described in Counter-Defendants' Complaint herein. Counter-Plaintiffs assert that any damages that they owe to Counter-Defendants should be offset by the damages caused to Counter-Plaintiffs as a result of the fraudulent conduct of Counter-Defendants, including but not limited to the Counter-Plaintiffs' loss of the down payment in the amount of $78,700.36 which Counter-Plaintiffs paid when Counter-Defendants acquired the Property.

### RESULTING TRUST

15. The $78,700.36 down payment for the purchase by the Plaintiffs from the Defendants of the property located at 105 Thoroughbred Court, Santa Teresa, New Mexico (the "Property"), was paid by the Defendants. After the closing of the said "sale" of the Property from the Defendants to the Plaintiffs, the Defendants continued to occupy and to reside at the Property. Additionally, after the closing of the said "sale" of the Property from the Defendants to the Plaintiffs, the Defendants continued to make the mortgage payment on the Property pursuant to a lease from the Plaintiffs, as landlord, to the Defendants, as tenant.

16. Defendants therefore assert that Plaintiffs hold title to the Property in a resulting trust (or constructive trust) for the benefit of the Defendants. Defendants therefore request that the Court find the Defendants are beneficial owners of the Property, and that Plaintiffs hold title to the Property in a resulting trust (or constructive trust) for the benefit of Defendants.

### DEED ACTUALLY IS A MORTGAGE

17. On or about February 3, 2006, Defendant, FRANCISCO JAYME, conveyed the Property located at 105 Thoroughbred Court, Santa Teresa, New Mexico, to Plaintiffs pursuant to a deed. The $78,700.36 down payment for the purchase by the Plaintiffs from the Defendants of the property located at 105 Thoroughbred Court, Santa Teresa, New Mexico (the "Property"), was paid by the Defendants. After the closing of the said "sale" of the Property from the Defendants to the Plaintiffs, the Defendants continued to occupy and to reside at the Property. Additionally, after the closing of the said "sale" of the Property from

the Defendants to the Plaintiffs, the Defendants continued to make the mortgage payment on the Property pursuant to a lease from the Plaintiffs, as landlord, to the Defendants, as tenant.

18. The "sale" of the Property was intended by the Plaintiffs and the Defendants as a mechanism whereby they could access the equity that the Defendants had in the Property. It was intended that this equity would then be used as Defendants' contribution into the real estate development, known as Country Cove Subdivision, jointly being developed by the Plaintiffs and the Defendants. Upon the sale of the lots from the developed subdivision, the parties intended that Defendants would use their portion of the profits from said sales to pay off the mortgage on the Property. When the said mortgage was paid off, the parties intended that the Plaintiffs would then deed the Property back to the Defendants.

19. The Defendants therefore assert that the "sale" of the Property by deed from Defendant, FRANCISCO JAYME, to Plaintiffs actually was not intended as a sale, but rather was intended as a mortgage to secure the Defendants payment of the mortgage from Countrywide placed upon the Property at the time that Defendant, FRANCISCO JAYME, conveyed the Property to Plaintiffs by a deed.

20. The terms of the "sale" of the Property to Plaintiffs was, in part, that the Defendants would make the mortgage payments to the lender (except that Plaintiffs agreed to pay one-half (½) of the increase in the said mortgage payments resulting from the refinance of the Property, i.e. Defendants' mortgage payments after closing exceeded their pre-closing mortgage payments, and, since the increase resulted from the parties' intentions to refinance the Property to acquire funds to be used in the real estate development, each the Plaintiffs and the Defendants agreed to pay one-half (½) of that increase), and would make the tax and insurance payments on the Property. Since Defendants here request that Court order that the deed be cancelled since it was actually intended as a mortgage rather than as a deed, Defendants hereby offer to reimburse Plaintiffs for all sums paid by Plaintiffs for the mortgage, insurance, and taxes on the Property. Sine the Plaintiffs, when asked, did not know this amount, Defendants offer to pay the amount to Defendants when it is properly calculated.

21. The Defendants therefore request that the Court order that the deed from Defendant, FRANCISCO JAYME, to Plaintiffs, since it actually was intended as a mortgage, be cancelled, and that title to the Property be restored to Defendants.

RIGHT TO RETAIN POSSESSION OF PROPERTY
UNDER SECTION 365(I) OF THE US BANKRUPTCY CODE

22. In the alternative, without waiving any of the foregoing, Defendants assert that they are a non-debtor party in possession of land (the Property) pursuant to a contract for the purchase of that land. Consequently, under Section 365(i) of the US Bankruptcy Code, since the Defendants are, and have been for all times relevant to this cause of action, in possession of the Property, and since Defendants have made the election contemplated under the said Section 365(i), Defendants have the right to remain in possession of the Property and to continue their purchase of the Property. In order to do so, Defendants hereby offer to bring current all payments due on the Property, if any, and to reimburse Plaintiffs for all sums paid by Plaintiffs for the mortgage, insurance, and taxes on the Property, if any.

WHEREFORE, PREMISES CONSIDERED, Defendants and Counter-Plaintiffs prays that Plaintiffs take nothing by their Complaint, and that the Court find that:

A) The Lease is an executory contract subject to Texas law;

B) That Plaintiff and Counter-Defendant, JOE MONGE, has not provided proper notice to Defendant and Counter-Plaintiff, ALICIA ROJAS, of any default of her obligations under the Lease;

C) That Counter-Plaintiff, ALICIA ROJAS, is entitled to cure any default of her obligations under the Lease as is provided under Section 5.065 of the Texas Property Code, after receiving proper notice of such default;

D) That Counter-Plaintiffs were induced to convey the Property to Counter-Defendants by Counter-Defendants' fraud and that Counter-Plaintiffs are entitled to the following:
   1) damages; and
   2) rescission of the transaction by which the Counter-Plaintiffs conveyed the Property to Counter-Defendants;

E) That the Court find that Plaintiffs hold title to the Property in a resulting trust for the benefit of Defendants, and that the Court find that Defendants are the owners of the Property; and

F) That the Court find that the deed by which the Defendant, FRANCISCO JAYME, conveyed the Property to Plaintiffs was actually a mortgage, and that the Court order that the said deed be cancelled, and that title to the Property be restored to Defendants.

G) That the Court find that Defendants hold the Property pursuant to a contract to purchase the Property, that Defendants currently are, and have been for all times relevant to this cause of action, in possession of the Property, and that Defendants are entitled to complete that purchase.

In the alternative, without waiving the foregoing, Defendants and Counter-Plaintiffs pray that the Court abate the above-captioned adversary proceeding to allow Plaintiff and Counter-Defendant, JOE MONGE, to serve proper notice of default on Counter-Plaintiff, ALICIA ROJAS, and to afford Counter-Plaintiff, ALICIA ROJAS, her proper time period to cure any default as is provided by Section 5.065 of the Texas Property Code.

Further, Defendants and Counter-Plaintiffs pray that the Court grant them such further and other relief to which they show themselves to be entitled.

\ Signed this the _21st_ day of _August_, 2012

Respectfully submitted,

GUEVARA, BAUMANN, COLDWELL & REEDMAN, LLP
4171 North Mesa Street, Suite B-201
El Paso, Texas 79902
Tel.: (915) 544-6646
Fax.: (915) 544-8305

By: _/s/ Lane_
Lane C. Reedman
Texas State Bar No. 16698400

Attorneys for Defendants/Counter-Plaintiffs

## VERIFICATION

STATE OF TEXAS )
)
COUNTY OF EL PASO )

BEFORE ME, the undersigned Notary Public, on this day personally appeared ALICIA ROJAS, who, under oath, stated that she is a Defendant on whose behalf of the foregoing Third Amended Counterclaim is filed, and that she is legally competent to make this Verification, which is based on her personal knowledge, and that the factual statements contained in the Third Amended Counterclaim are true and correct.

_____
ALICIA ROJAS, Affiant

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 10th day of August, 2012.



_____
Notary Public in and for the State of Texas
My commission expires: 4/12/2013

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Complaint was mailed via first class U.S. mail, postage prepaid, to the following parties the 21st day of August, 2012.

| Mr. Michael R. Nevarez<br>Attorney at Law<br>P. O. Box 12247<br>El Paso, Texas 79912 | Mr. Sidney J. Diamond<br>Attorney at Law<br>3800 North Mesa St., #B-3<br>El Paso, Texas 79902 | Mr. Fernando Chacon<br>Attorney at Law<br>109 N. Oregon, Suite 1119<br>El Paso, Texas 79901 |
|---|---|---|
| Mr. Hugo Maynez Maldonado<br>5710 Trowbridge Drive<br>El Paso, Texas 79903 | Monroj Investments, Inc.<br>c/o Mr. Alicia Rojas<br>Registered Agent<br>105 Thoroughbred Court<br>Santa Teresa, NM 88008-9130 | Northeast Patriot Plaza, Inc.<br>c/o Mr. Alicia Rojas<br>Registered Agent<br>105 Thoroughbred Court<br>Santa Teresa, NM 88008-9130 |

_____
LANE C. REEDMAN